# In the United States Court of Federal Claims

No. 20-909C
Filed: December 14, 2020

| | |
|---|---|
| **CHARLES J. ADAMS, et al.,**<br><br>               *Plaintiffs*,<br><br>v.<br><br>**THE UNITED STATES,**<br><br>               *Defendant*. | **Keywords:** Motion to Dismiss; RCFC 12(b)(6); Motion for More Definite Statement; RCFC 12(e); 5 U.S.C. §§ 5545, 5343; hazardous duty pay; environmental differential pay; FLSA; 29 U.S.C. § 207; COVID-19. |

*David Ricksecker*, McGillivary Steele Elkin LLP, Washington, D.C., for Plaintiff.

*Eric E. Laufgraben*, Senior Trial Counsel, and *Liridona Sinani*, Trial Counsel, with whom were *Allison Kidd-Miller*, Assistant Director, *Robert E. Kirschmann, Jr.*, Director, National Courts Section, Commercial Litigation Branch, *Jeffrey B. Clark*, Acting Assistant Attorney General, Civil Division, U.S. Department of Justice, Washington, D.C., *Marie C. Clarke*, *Douglas S. Goldring*, and *Kathleen Haley Harne*, Of Counsel, Federal Bureau of Prisons, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

      The country is currently in the throes of a viral pandemic that has wholly altered American life, potentially for years to come.[1] Against that backdrop, the Plaintiffs, comprising 115 employees of the United States Federal Bureau of Prisons in Lexington, Kentucky, bring claims against the United States asserting entitlement to hazardous duty pay. These employees allege that in the course of their employment, they were exposed to the novel coronavirus SARS-CoV-2—the cause of the COVID-19 disease and pathogenic catalyst of the global pandemic.[2]

---

[1] The Centers for Disease Control and Prevention (CDC) reports over 16 million domestic cases of COVID-19 infections resulting in nearly 300,000 deaths as of the filing of this Order. *See* https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited December 14, 2020).

[2] In its brief, the United States points out that the virus is titled differently than the disease it causes. (Def.'s Mot. at 1 n.1, ECF No. 9). But, as the Plaintiffs observe, the virus is a necessary precondition to the disease, so public health agencies and the general populace alike refer to the

The United States seeks dismissal of the Plaintiffs' claims, or in the alternative, moves for a more definite statement. (Def.'s Mot., ECF No. 9). However, as the Plaintiffs' Opposition persuasively explains, the employees have stated a plausible claim for relief that is not so vague or ambiguous that the United States is unable to reasonably prepare a response. (*See* Pls.' Opp., ECF No. 10). Therefore, the Plaintiffs' Complaint clears the initial hurdle necessary for them to continue their pursuit of relief. Accordingly, the Court **DENIES** the United States' Motion to Dismiss and **DENIES** the United States' Motion for a More Definite Statement.

## I. BACKGROUND

The Plaintiffs are current and former employees of the Federal Medical Center in Lexington, Kentucky (hereinafter "FMC Lexington"), a Bureau of Prisons facility adjacent to a minimum-security prison. (Compl. at 5, 7, ECF No. 1). Plaintiffs allege that, as of the date their Complaint, "more than 280 employees and inmates of FMC Lexington have been confirmed to be infected with COVID-19" and at least six inmates have died from the disease.[3] (Compl. at 9). COVID-19 is a highly contagious respiratory infection, producing symptoms that vary widely in nature and severity, and can be fatal. The Plaintiffs allege that, during their employment duties, they have "performed work with or in close proximity to objects, surfaces, and/or individuals infected with [COVID-19]." (*Id*. at 8–9).

In seeking relief, Plaintiffs primarily rely on 5 U.S.C. §§ 5545 (Count I) & 5343 (Count II). (Compl. at 12–16). Section 5545—and thus Count I—concerns hazardous duty pay. Section 5343—and Count II—concerns environmental differential pay. The difference is simple: hazardous duty pay is available to general schedule salaried employees, while environmental differential pay is available to waged employees. Plaintiffs also bring a Fair Labor Standards Act ("FLSA") claim under Count III. (Compl. at 16–17). Count III is derivative of the first two Counts in that it seeks an adjustment to the employees' overtime compensation that comports with the entitlements to differential pay under Sections 5545 & 5343.

### A. Hazardous Duty Pay

A general schedule salaried federal employee is eligible to receive hazardous duty pay differentials "for duty involving unusual physical hardship or hazard[.]" 5 U.S.C. § 5545(d). However, when a general schedule employee's classification "takes into account the degree of physical hardship or hazard involved in the performance of the duties" of that position, the employee is not entitled to hazardous duty pay (subject to certain exceptions that are not relevant

---

virus and disease collectively as "COVID-19." (Pls.' Opp. at 5–6 n.2, ECF No. 10). Because the distinction is irrelevant for the purposes of the United States' Motion to Dismiss, in the interests of simplicity, the Court will simply refer to the virus and the disease as "COVID-19."

[3] In Kentucky, where FMC Lexington is centrally located, COVID-19 infection rates currently surpass the national average with an estimated 22,600 new cases within the past seven days. https://covid.cdc.gov/covid-data-tracker/#cases_casesper100klast7days (last visited December 14, 2020).

here). § 5545(d)(1). The Office of Personnel Management ("OPM") is empowered to prescribe regulations consistent with the statute. §§ 5545(d) & 5548.

Under this authority, OPM defined "duty involving physical hardship" to mean "duty that may not in itself be hazardous, but causes extreme physical discomfort or distress and is not adequately alleviated by protective or mechanical devices[.]" 5 C.F.R. § 550.902. Further, "[h]azardous duty means duty performed under circumstances in which an accident could result in serious injury or death[.]" § 550.902. OPM also established a table to administer hazardous duty pay differentials. § 550.904(a). This table, found in Appendix A to Subpart I of 5 C.F.R. Part 550, lists "Exposure to Hazardous Agents, [including] work with or in close proximity to . . . [v]irulent biologicals" as a compensable hazardous duty. Appendix A describes virulent biologicals as "[m]aterials of micro-organic nature which when introduced into the body are likely to cause serious disease or fatality and for which protective devices do not afford complete protection." 5 C.F.R. § Pt. 550, Subpt. I, App. A.

### B. Environmental Differential Pay

A waged federal employee is eligible to receive environmental differential pay "for duty involving unusually severe working conditions or unusually severe hazards[.]" 5 U.S.C. § 5343(c)(4). Under its statutory authority, OPM is empowered to establish regulations to administer environmental differential pay. § 5346. OPM has created a schedule for qualifying duties, which are included in Appendix A to Subpart E of 5 C.F.R. Part 532. *See* 5 C.F.R. § 532.511. Appendix A "lists the environmental differentials authorized for exposure to various degrees of hazards, physical hardships, and working conditions of an unusual nature." According to Appendix A, there are pay differentials for two categories of exposure to micro-organisms:

> 6. Micro-organisms—high degree hazard.
>
> > Working with or in close proximity to micro-organisms which involves potential personal injury such as death, or temporary, partial, or complete loss of faculties or ability to work due to acute, prolonged, or chronic disease. These are work situations wherein the use of safety devices and equipment, medical prophylactic procedures such as vaccines and antiserims [sic] and other safety measures do not exist or have been developed but have not practically eliminated the potential for such personal injury[.]
>
> . . .
>
> 7. Micro-organisms—low degree hazard.
>
> > a. Working with or in close proximity to micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man, such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material

3

> b. Working with or in close proximity to micro-organisms in situations for which the nature of the work does not require the individual to be in direct contact with primary containers of organisms pathogenic for man, such as culture flasks, culture test tubes, hypodermic syringes and similar instruments, and biopsy and autopsy material and wherein the use of safety devices and equipment and other safety measures have not practically eliminated the potential for personal injury[.]

5 C.F.R. § Pt. 532, Subpt. E, App. A.

### C. FLSA Overtime

Pursuant to Section 7(a) of the FLSA, employees are entitled to compensation for work performed in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which he [or she] is employed." 29 U.S.C. § 207; *see also* 29 U.S.C. § 204(f) and 5 C.F.R. 551.501 ("An agency shall compensate an employee who is not exempt . . . for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay" subject to listed exemptions). Calculations of differential pay are used as the base rate for calculating waged employees' overtime pay. 5 C.F.R. § 532.511(c) ("Environmental differential pay is part of basic pay and shall be used to compute premium pay [including] pay for overtime . . .."). However, for general schedule employees, "[h]azard pay differential is in addition to any additional pay or allowances payable under other statutes. It shall not be considered part of the employee's rate of basic pay in computing additional pay or allowances payable under other statutes." 5 C.F.R. § 550.907.

## II. DISCUSSION

### A. Motion to Dismiss

The United States moves to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief can be granted. RCFC 8, the counterpart to Fed. R. Civ. P. 8, requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). In considering a motion to dismiss for failure to state a claim, the Court "must accept as true all of the allegations in the [pleading]" and "must indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001).

For a claim to be properly stated, the pleading "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[O]nly a [pleading] that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

The United States moves for dismissal under RCFC 12(b)(6), arguing that Plaintiffs' Complaint does not state a claim for entitlement to either hazardous duty or environmental

4

differential pay. (Def.'s Mot. at 14). Naturally, Plaintiffs oppose dismissal, arguing that although the parties agree on the elements which must be pled, the United States' legal theory in support of dismissal is not supported by the plain text of the relevant statutes and regulations. (Pls.' Opp. at 11). The Court finds that each of the three counts pled in Plaintiffs' Complaint plausibly states a claim for relief.

> i. <u>Plaintiffs Have Sufficiently Alleged Entitlement to Hazardous Duty Pay Under 5 U.S.C. § 5545 to Survive a Motion to Dismiss</u>

Plaintiffs and the United States agree that, to state a claim for hazardous duty pay based on COVID-19 exposure, the Complaint must effectively plead three elements:

(1) The employee was assigned and performed work with or in close proximity to COVID-19;

(2) COVID-19 is a virulent biological likely to cause serious disease or fatality if introduced into the human body and for which protective devices do not afford complete protection; and

(3) The employee's job classification does not take into account the degree of physical hardship or hazard involved in the performance of the duties of that position.

(Def.'s Mot. at 8; Pls.' Opp. at 12–13); 5 C.F.R. § 550.904(a); 5 C.F.R. § Pt. 550, Subpt. I, App. A.

The Court agrees that Plaintiffs have sufficiently pled facts that, taken as true, support each element in their Complaint. Plaintiffs allege that they were correctional workers assigned to work with or in proximity to COVID-19. (Compl. ¶¶ 7, 25, 28, 30, 36). They have alleged COVID-19 is a virulent biological likely to cause significant injury or death, (Compl. ¶¶ 18, 19), and that protective devices do not afford complete protections, (Compl. ¶¶ 20–24, 25, 27). Finally, Plaintiffs have pled that the classification of their positions does not account for the hardships or hazards involved in the performance of those duties. (Compl. ¶¶ 3–7, 26). RCFC 8(a)(2) does not require more. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Here, Plaintiffs have sufficiently pled facts supporting entitlement to hazardous duty pay to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. Thus, Count I survives the United States' Motion to Dismiss.

The United States incorrectly relies on *Adair v. United States*, 497 F.3d 1244 (Fed. Cir. 2007), in arguing that "working with or in close proximity to" either a virulent biological or micro-organism "refers to assignments such as cultivating virulent tissue cultures, and operating or maintaining equipment in biological experimentation or production." (Def.'s Mot. at 16). In *Adair*, several prison guards at a Federal Correctional Institution sought enhanced backpay for exposure to second-hand tobacco smoke, which they argued was a toxic chemical covered by Appendix A. *Adair*, 497 F.3d. at 1249. The Federal Circuit affirmed the lower court's dismissal under RCFC 12(b)(6) on the grounds that, although second-hand tobacco smoke contains toxic chemicals, it did not fall within § 5545(d) or the implementing regulations for several reasons.

5

*Id*. First, the Court explained that § 5545(d) provides for differential pay only for duties involving "*unusual* physical hardship or hazard," but that second-hand smoke is not "unusual" within the meaning of the statute. *Id*. at 1252–53 (emphasis in Court's opinion). Second, the Court explained that Appendix A only covers "toxic chemical materials when there is a *possibility of leakage or spillage*." *Id*. at 1256 n.6 (citing 5 C.F.R. Pt. 550, Subpt. I, App. A) (emphasis in Court's opinion). It observed that second-hand smoke is a "byproduct of cigarette burning—it does not have a *possibility* of leaking or spilling from cigarettes." *Id*. at 1256 (emphasis in original). Third, the Court determined that the dangers of second-hand smoke could "be adequately alleviated by protective or mechanic devices, such as ventilation (under the definition of 'duty involving physical hardship') and because it does not constitute an 'accident' (under the definition of 'hazardous duty')." *Id*. at 1255. Therefore, the Federal Circuit concluded second-hand tobacco smoke did not fall within either the plain meaning of § 5545(d) or the implementing regulations of Appendix A. *Id*. at 1255–56.

The United States argues that in interpreting § 5343(c)(4) (for environmental differential pay) and its implementing regulations, the Federal Circuit narrowed the phrase "working with or in close proximity [to toxic chemicals]" to mean "'scenarios where the job assignment requires directly or indirectly working *with* toxic chemicals or containers that hold toxic chemicals as part of a job assignment[.]'" (Def.'s Mot. at 17 (quoting *Adair*, 497 F.3d at 1258)). The United States draws an analogy to virulent biologicals to maintain that the only way the Plaintiffs in this case could state a claim with respect to the first element is if Plaintiffs pled they were working directly with COVID-19 or containers that held the virus as part of the job assignment. (*Id*. at 17–18). Plaintiffs aptly point out that such a narrow reading would produce absurd results:

> [I]f the Government's interpretation is accepted, it is likely no one would be entitled to hazardous duty pay for exposure to virulent biologicals at all. Only those people who were working with and handling virulent biologicals on a regular basis would be eligible for hazardous duty, but through their routine exposure, this hazard would have been taken into account in the classification of their position, making them ineligible for the hazardous duty pay. The Government's limiting definition would therefore swallow the rule, rendering Appendix A's reference to virulent biologicals superfluous.

(Pls.' Opp. at 15). The crux of the United States' argument is that working with infected objects, surfaces, and persons is not working with or in close proximity to the virus itself, which it claims is what is required to state a claim for hazardous duty pay. (Def.'s Mot. at 17–18). However, the Court agrees with Plaintiffs that "[t]he added specificity of 'objects, surfaces, and/or individuals infected with' COVID-19 in the Complaint merely clarifies how Plaintiffs have been working 'with or in close proximity to' COVID-19." (*Id*. at 11).

The United States further argues that the Complaint does not sufficiently connect the Plaintiffs to an infected employee or inmate, identify specific job assignments of the Plaintiffs or specify where the Plaintiffs came into contact with an object, surface, or individual infected. (Def.'s Mot. at 21). However, these are matters for discovery, and potentially, summary judgment. Plaintiffs' Opposition is well stated: "[J]ust because Plaintiffs do not explicitly state, for example, that 'on *X* date, plaintiff *Y* was assigned to work and did work with and in close proximity to inmate *Z*, who tested positive for COVID-19 the same day,' it does not mean they

have failed to apprise the government that such facts exist." (Pls.' Opp. 22). Plaintiffs have alleged sufficient facts that state a plausible claim for relief: they were correctional workers at the time of COVID-19 outbreaks at FMC Lexington and were exposed to COVID-19 through the course of their assigned duties. The Complaint gives the United States fair notice of Plaintiffs' claims. Plaintiffs need not include "detailed factual allegations" in the Complaint, they must simply "raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545. The Court finds that Plaintiffs have done so here.

> ii. Plaintiffs Have Sufficiently Alleged Entitlement to Environmental Differential Pay Under 5 U.S.C. § 5343

To state a claim for environmental differential pay under § 5343, the parties agree that either two or three elements must be pled, depending on the severity of the hazard presented by the micro-organism. (Def.'s Mot. at 10; Pls.' Opp. at 13). To demonstrate entitlement to environmental differential pay for low-degree hazardous exposure, the Plaintiffs must plead:

(1) The employee worked with or in close proximity to COVID-19; and

(2) COVID-19 is a micro-organism for which safety devices, equipment, and other measures have not practically eliminated the potential for personal injury.

5 C.F.R. § 532.511(d); 5 C.F.R. Pt. 532, Subpt. E, App. A. If the Plaintiffs claim their exposure presented a "high degree hazard," they must plead a third element:

(3) The work involves potential personal injury such as death, or temporary, partial, or complete loss of facilities or ability to work due to acute, prolonged, or chronic disease.

5 C.F.R. § 532.511(d); 5 C.F.R. Pt. 532, Subpt. E, App. A.

Like its earlier counterpart, Count II sufficiently states a plausible claim for relief under § 5343 to survive a motion to dismiss. Plaintiffs allege they were correctional workers assigned to work with or in proximity to COVID-19. (Compl. ¶¶ 7, 25, 28, 30, 36). They have alleged COVID-19 is a micro-organism that has the potential to cause personal injury, (Compl. ¶¶ 18, 19), and safety measures do not afford complete protections, (Compl. ¶¶ 20–24, 25, 27). Plaintiffs have also pled that the virus is a high degree hazard, pointing out data from public health institutions that indicate the virus can cause "mild . . . to severe illness and death." (Compl. ¶¶ 18, 19). On its review of the Complaint, the Court finds that Plaintiffs have sufficiently pled facts that, taken as true, support entitlement to environmental differential pay and thus "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 662. Thus, Count II survives the United States' Motion to Dismiss.

The United States' arguments to the contrary are unpersuasive. As explained in Section II(A)(i) *supra*, the United States' theory that Plaintiffs must allege they were actually handling vials or test tubes containing micro-organisms to state a claim for working "with or in proximity to" hazardous micro-organisms is too narrow. The United States' additional arguments are based

on examples that attempt to illustrate the regulations and guidance from OPM contained in a now-defunct Federal Personnel Manual. (Def.'s Mot. at 17–18). However helpful these examples and guidance may be, the United States acknowledges that they are non-exhaustive, and not binding on the Court. (*Id*. at 18; Def.'s Reply at 8, ECF No. 12). Therefore, reliance on these sources would be inappropriate at this stage of litigation. Under § 5343, Plaintiffs have stated a claim for relief that rises "above the speculative level[.]" *Twombly*, 550 U.S. at 545. Thus, the United States' Motion to Dismiss with respect to Count II must be denied.

      iii.   Plaintiffs Have Sufficiently Alleged Entitlement to an Adjustment to Overtime Compensation Under the FLSA

The parties agree that Count III is derivative of Counts I & II in that it alleges Plaintiffs' overtime pay was miscalculated because their regular rate of pay failed to take environmental differentials or hazard pay into account. (*See* Compl. ¶ 57; Def.'s Reply at 17). The United States' Motion to Dismiss Count III is entirely premised on its arguments that Counts I & II are not viable. (Def.'s Mot. at 23 (arguing that "because Count III is dependent upon the viability of Counts I and II, and Counts I and II fail to state a claim, Count III should also be dismissed.")). Because the Court finds Counts I & II to be viable at this stage, Count III remains viable as well. Therefore, the United States' Motion to Dismiss is denied with respect to Count III.

   B.  *Motion for a More Definite Statement*

In addition to its Motion to Dismiss, the United States, in the alternative, moved for a more definite statement under RCFC 12(e). (Def.'s Mot. at 24–26). Under RCFC 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." But RCFC 8(a)(2) only requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Thus, a motion under RCFC 12(e) "must point out the defects complained of and the details desired." Other judges of this Court have explained that RCFC 12(e) is "designed to remedy unintelligible pleadings, not to correct for lack of detail." *Goodeagle v. United States*, 111 Fed. Cl. 716, 722 (2013) (internal citations and quotations omitted); *see also Whalen v. United States*, 80 Fed. Cl. 685, 693–94 (2008) (finding that "[d]iscovery should resolve any complications" arising from facts pertaining to employment records omitted from the Complaint).

In support of its Motion, the United States includes a laundry list of information it wishes Plaintiffs had included in the Complaint. (Def.'s Mot. at 25). Primarily, the United States argues that Plaintiffs were required to include detailed (and largely repetitive) information about each of the 115 employees that have brought claims, including the nature of their position and the incidents at the facility which may have exposed them to COVID-19. (*Id*. at 24). The Court agrees with the Plaintiffs that it "strains credulity" that the Complaint is "so vague or ambiguous that the [United States] cannot reasonably prepare a response." (*See* Pls.' Opp. at 25 (persuasively arguing that the United States' "detailed motion to dismiss" shows that the United States clearly "understands Plaintiffs' complaint.")). The majority of the information that the United States seeks is either in its possession as the employer of the Plaintiffs or would be readily produced in discovery. *See Whalen*, 80 Fed. Cl. 685, 694 (finding a more definite statement unnecessary where the "government has custody of the relevant employment

8

documentation . . . and can resolve any uncertainty regarding any particular individual's claim through discovery."); *Fed. Air Marshals v. United States*, 74 Fed. Cl. 484, 488 (2006) (denying a RCFC 12(e) motion in a case with more than one thousand plaintiffs because the government had control over the relevant records and could easily access those documents during discovery).

As discussed above, Plaintiffs are not required to prove their claims at the motion to dismiss stage, and RCFC 12(e) is not designed "to correct [a pleading] for lack of detail[.]" *Goodeagle*, 111 Fed. Cl. at 722 (2013) (internal citations and quotations omitted). Plaintiffs' claims here establish a plausible basis for relief and are sufficiently intelligible to permit the United States to respond.

### III. CONCLUSION

Counts I and II plausibly state claims for relief that are not so vague and ambiguous that the United States is unable to prepare a response. Likewise, Count III, which is derivative of Counts I and II, plausibly states a claim entitling Plaintiffs to relief. Therefore, the Court orders the following:

1. The United States' Motion to Dismiss, (ECF No. 9), is **DENIED**.

2. The United States' Motion for a More Definite Statement is **DENIED**.

3. The United States is **ORDERED** to file an Answer **on or before December 28, 2020**.

4. **On or before January 11, 2021**, the parties are **ORDERED** to file a Joint Preliminary Status Report consistent with Appendix A of the RCFC. This status report shall contain a proposed schedule for further proceedings.

**IT IS SO ORDERED.**

s/     David A. Tapp
DAVID A. TAPP, Judge